## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Sep 03 2019, 8:52 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Cara Schaefer Wieneke
Wieneke Law Office, LLC
Brooklyn, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Robert J. Henke
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Involuntary Termination of the Parent-Child Relationship of J.L. (Minor Child)

and

T.L. (Mother),

*Appellant-Respondent,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner.*

September 3, 2019

Court of Appeals Case No. 19A-JT-655

Appeal from the Clay Circuit Court

The Honorable Joseph Trout, Judge

Trial Court Cause No. 11C01-1803-JT-87

**Bailey, Judge.**

# Case Summary

T.L. ("Mother") appeals the termination of her parental rights to J.L. ("Child"), upon the petition of the Vigo County Department of Child Services ("the DCS"). We affirm.

# Issue

Mother presents a single issue for review: Whether the DCS established, by clear and convincing evidence, the requisite statutory elements to support the termination decision.

# Facts and Procedural History

In May of 2016, Mother, then pregnant with her third child, called police to report that her boyfriend had battered her. He allegedly retaliated by reporting to the DCS that Mother was mentally unstable. In June of 2016, the DCS entered into an informal adjustment with Mother, who agreed to submit to random drug screens and complete a drug assessment. Mother then relocated with her children to her mother's residence in Clay County and the Clay County DCS ("Clay DCS") began supervising the case.

Mother did not complete her drug assessment but submitted to drug screens. On two occasions in July of 2016, Mother's drug screens yielded positive results for methamphetamine. In August of 2016, Mother gave birth and both she and her newborn child tested positive for methamphetamine. Clay DCS removed

all three children and placed them in foster care. The eldest and youngest were later placed with their respective fathers; J.L. remained in foster care. Mother admitted that J.L. was a Child in Need of Services ("CHINS"). Mother was ordered to, among other things, complete psychological assessments, maintain suitable housing and employment, refrain from using illegal substances, take all mental health medications as directed, attend child visitation sessions, and successfully complete substance abuse treatment recommendations.

[5] In February of 2017, Mother was jailed for punching her eldest child's father during a supervised visitation session. Her visitation was suspended, but was restored after she demonstrated partial compliance with reunification services. However, Mother articulated threats against a caseworker, the Court Appointed Special Advocate ("CASA"), and one or more of her children's fathers. Clay DCS personnel obtained a protective order barring Mother from appearing at their offices and supervision of Mother's case was again transferred.

[6] Mother underwent a psychological evaluation and was diagnosed as having bipolar disorder, cannabis dependency, and panic disorder. She had a provisional diagnosis of borderline personality disorder. She was briefly hospitalized after expressing suicidal and homicidal ideations. Mother participated in some individual and group therapy but elected not to take her prescribed psychiatric medications.

[7] Mother was on probation stemming from a Montgomery County conviction for conversion when she failed a drug screen and was returned to jail in January of

2018. On March 29, 2018, the DCS petitioned to terminate Mother's parental rights to J.L. Mother was released from jail in May of 2018 and became significantly more compliant with services.

[8] On August 28 and September 18, 2018, the trial court conducted an evidentiary hearing. On February 19, 2019, the court issued its order terminating Mother's parental rights to J.L. Mother now appeals.[1]

# Discussion and Decision

## Standard of Review – Sufficiency of the Evidence

[9] When we review whether the termination of parental rights is appropriate, we will not reweigh the evidence or judge witness credibility. *In re V.A.*, 51 N.E.3d 1140, 1143 (Ind. 2016). We will consider only the evidence and reasonable inferences that are most favorable to the judgment. *Id.* In so doing, we give "due regard" to the trial court's unique opportunity to judge the credibility of the witnesses. *In re I.A.*, 934 N.E.2d 1127, 1132 (Ind. 2010) (citing Indiana Trial Rule 52(A)). We will set aside the trial court's judgment only if it is clearly erroneous. *K.T.K. v. Ind. Dep't of Child Servs.*, 989 N.E.2d 1225, 1229 (Ind. 2013). In order to determine whether a judgment terminating parental rights is clearly erroneous, we review the trial court's judgment to determine whether the evidence clearly and convincingly supports the findings and the

---

[1] J.L.'s father agreed to termination of his parental rights and he is not an active party on appeal.

findings clearly and convincingly support the judgment. *I.A.*, 934 N.E.2d at 1132.

## Requirements for Involuntary Termination of Parental Rights

[10] "The Fourteenth Amendment to the United States Constitution protects the traditional right of parents to establish a home and raise their children." *In re Adoption of O.R.*, 16 N.E.3d 965, 972 (Ind. 2014). Although parental rights are of a constitutional dimension, the law provides for the termination of those rights when the parents are unable or unwilling to meet their parental responsibilities. *Bester v. Lake Cty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). The State is required to prove that termination is appropriate by a showing of clear and convincing evidence, a higher burden than establishing a mere preponderance. *In re V.A.*, 51 N.E.3d at 1144.

[11] Indiana Code section 31-35-2-4(b)(2) sets out the elements that the DCS must allege and prove by clear and convincing evidence to terminate a parent-child relationship:

> (A) that one (1) of the following is true:
>
> (i)     The child has been removed from the parent for at least six (6) months under a dispositional decree.
> (ii)    A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.
> (iii)   The child has been removed from the parent and has been under the supervision of a local office or probation department

for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;

(B) that one (1) of the following is true:

(i)     There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
(ii)    There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
(iii)   The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

[12]   Indiana Code Section 31-35-2-4(b)(2)(B) is written in the disjunctive, and therefore the court need only to find that one of the three requirements of subsection (b)(2)(B) was established by clear and convincing evidence. *See In re L.S.*, 717 N.E.2d 204, 209 (Ind. Ct. App. 1999), *trans. denied*, *cert. denied*.

## Analysis

[13]   Mother argues that three factual findings supporting the trial court's conclusions as to removal conditions and best interests are erroneous and, without the erroneous findings, the evidence is deficient. Specifically, Mother challenges the factual findings that she has a "severe untreated mental illness,"

failed to participate in services, and has had a pattern of instability. Appellant's Brief at 11.

[14] A claim of insufficient evidence as to likelihood of remedying conditions invokes a "two-step analysis." *In re E.M.*, 4 N.E.3d 636, 643 (Ind. 2014). First, we identify the conditions that led to removal; and second, we must determine whether there is a reasonable probability that those conditions will not be remedied. *Id.* In the second step, the trial court must judge parental fitness as of the time of the termination hearing, taking into consideration the evidence of changed conditions. *Id.* (citing *Bester*, 839 N.E.2d at 152). The trial court is entrusted with balancing a parent's recent improvements against habitual patterns of conduct. *Id.* The trial court has discretion to weigh a parent's prior history more heavily than efforts made only shortly before termination. *Id.* "Requiring trial courts to give due regard to changed conditions does not preclude them from finding that parents' past behavior is the best predictor of their future behavior." *Id.*

[15] Child was removed from Mother's care when a DCS informal adjustment failed. At that time, Mother and her newborn had tested positive for methamphetamine. Mother had not completed a drug assessment, as agreed upon as part of the informal adjustment. She did not have employment or stable housing. Over the next two years, Mother participated in some services but did not ever progress to having unsupervised visits with Child. Nor did she maintain long-term sobriety, obtain independent housing, retain employment, or comply with recommended psychiatric treatment.

[16]    Although Mother regularly visited with Child, the visits were marked by inappropriate speech and conduct.  For example, Mother threatened to kill the fathers of her children.  She struck one of the fathers during a visit and the police were called.  At times, Mother appeared for visits "scattered" and "jumpy," and one visit ended when Mother fell into a wall.  (Tr. Vol. III, pg. 16.)  On another occasion, Mother began screaming while holding her newborn.  She "didn't seem stable" and the services were "put on hold."  *Id.* at 18.  Ultimately, Mother participated in some group and individual therapy, but she rejected any prescribed medication in favor of attempts to "cope like a normal person."  *Id.* at 186.

[17]    Mother claims that the trial court mischaracterized the severity of her mental illness.  She does not contest her bipolar diagnosis, but asserts that she suffers from a milder type that is not marked by dramatic shifts between depression and mania.  The testimony of service providers indicates that, although Mother may not suffer from the most severe form of bipolar disorder, she suffers from multiple forms of mental illness, and has frequently displayed lack of impulse control in interpersonal interactions.  She was subject to a protective order to bar her from contacting or threatening Clay DCS caseworkers.  She has received in-patient treatment after threats to harm herself and others.  Critically, although Mother was diagnosed with bi-polar disorder, cannabis disorder, and panic disorder, and provisionally diagnosed with borderline personality disorder, she rejected all prescribed medication.  The trial court's factual finding

that Mother has severe untreated mental illness is not lacking evidentiary support.

[18] Mother also claims the trial court erred in finding that she was non-compliant with services. She points to testimony that, since her release from jail on the probation violation, she has consistently participated in home-based therapy and provided drug screens that were negative for substances other than THC. But the testimony of record also discloses that Mother's earlier participation in services had been sporadic. She had failed to attend a scheduled psychological evaluation, had not appeared for drug screens on numerous occasions, and had failed to complete a six-month program at the Hamilton Center. Numerous drug screens were positive for methamphetamine and THC. Mother's visitation had been suspended on more than one occasion due to her disruptive behavior. Again, the factual finding that Mother was non-compliant is not lacking evidentiary support.

[19] The final factual finding challenged by Mother is that she has a pattern of instability. At the termination hearing, Mother testified that she was living with her mother and did not consider that residence to be a suitable place for Child. She further testified that she had lost her job at the time of her last incarceration but was doing some work for cash and selling her plasma and had hopes of being rehired by a temporary agency. On appeal, she concedes her lack of a permanent job or residence, but argues that finding full-time employment was highly unlikely in light of her participation in time consuming services spanning both first and second shifts. We do not minimize the challenges or time

constraints that Mother faced. However, her argument is at bottom a request to reweigh the evidence. This we cannot do. *In re V.A.*, 51 N.E.3d at 1143.

[20] Mother also contends that the DCS did not present clear and convincing evidence that termination is in Child's best interests. In determining what is in a child's best interests, the court must look to the totality of the evidence. *In re A.D.S.*, 987 N.E.2d 1150, 1158 (Ind. Ct. App. 2013), *trans. denied*. We have previously held that recommendations by the case manager and CASA to terminate parental rights, in addition to evidence that the conditions resulting in removal will not be remedied, is sufficient to show by clear and convincing evidence that termination is in the child's best interests. *Id.* at 1158-59.

[21] Child had been removed from Mother's care for over two years. She had spent two-thirds of her life with her foster parents, who wished to adopt her. Child's caseworker and CASA both recommended termination of Mother's parental rights. Commendably, Mother had a recent history of sobriety from methamphetamine and active participation in services. That said, a court has discretion to weigh historical conduct more heavily than recent efforts. *In re E.M.*, 4 N.E.3d at 643. Mother's contention that the trial court failed to adequately consider the impact of severing Child's relationship with her siblings is simply a request to reweigh the evidence. There is not insufficient evidence that termination of parental rights is in Child's best interests.

# Conclusion

[22] The DCS established by clear and convincing evidence the requisite elements to support the termination of parental rights.

[23] Affirmed.

Najam, J., and May, J., concur.